## Eyre *against* The Marine Insurance Company.

Insurance, November 10th 1837, on vessel for and during the term of twelve calendar months, commencing that day at noon, with liberty of the globe, and if at sea at the expiration of said twelve months, the risk to continue at the same rate of premium until her arrival at her port of destination in the United States. *Held* that evidence was admissible to prove that the voyage described in the policy was known among merchants and underwriters as a trading voyage, and that on such a voyage, under such a policy, it is the usage of trade that the vessel insured should sail for any part of the globe to which she can get a freight at any time during the continuance of the said twelve months; and that by the usage of trade she continued to be covered by such policy during such voyage after the expiration of the said twelve months; and that such usage was well known to, and acted on by the underwriters of this port.

But evidence is not admissible to show that, on the voyage next preceding the one for which the said policy was effected, a different contract was made by the defendant with the plaintiff, and stating reasons for the present one, but not offering to prove anything which occurred at the making of the present policy, or was alleged by the defendant.

Nor that the order for insurance was drawn by the secretary of the defendant, and the plaintiff objected to the insertion of the words "at her port of destination" after the word "arrival," and was told by the secretary that it was immaterial, and the meaning was the same.

THIS was an action of debt on a policy of insurance, brought by Manuel Eyre and Charles Massey, trading as Eyre & Massey, against The Marine Insurance Company of Philadelphia.* The case came on for trial before ROGERS J. at *Nisi Prius,* where a verdict was rendered for the defendants.

The plaintiffs gave in evidence a policy of insurance, executed by the defendants on the 10th of November 1837, on the brig Delight, at the rate of 5 per cent., in the sum of $8500, lost or not lost, at and from                                    For and during the term of twelve calendar months, commencing this day at noon, and ending on the 10th day of November 1838, at noon, with liberty of the globe; and if at sea at the expiration of the said twelve months, the risk to continue at the same rate of premium until her arrival at her port of destination in the United States, upon the body, the tackle, apparel, and other furniture, of the good brig, called the Delight, of the burthen of               tons, or thereabouts, whereof is master for this present voyage, Carmick, or whosoever else shall go for master in the said vessel, or by whatsoever other name or names the said vessel, or the master thereof, is or shall be named or called : beginning the adventure upon the said vessel, tackle, apparel and other furniture, at and from               for twelve months

---

* See 6 *Whart.* 247.

from November 10, 1837, at noon, as aforesaid, and so shall continue and endure until the said vessel shall be safely arrived at November 10, 1838, at noon, with liberty of the globe, as aforesaid, and until she shall be moored twenty and four hours in good safety. And it shall and may be lawful for the said vessel, in her voyage aforesaid, to proceed, and sail to, touch, and stay at, any ports or places, if thereunto obliged by stress of weather, or other unavoidable accident, without prejudice to this insurance. The said vessel, the tackle, apparel and other furniture, for so much as concerns the assured by agreement, made between the assured and assurers in this policy, are and shall be valued at $8500, without any further account to be given by the assured to the assurers for the same.

The remainder of the policy was in the usual form. By one clause the assurers were to return a proportionate rate of premium for time not used, and no loss. And by a N. B., if the vessel was sold previous to the expiration of said twelve months, a proportionate rate of premium was to be returned.

The plaintiffs also gave in evidence the following orders for insurance:

*Philadelphia, November* 10, 1837.

INSURANCE COMPANY OF NORTH AMERICA.

Insure dollars 4000 on the freight of the brig Delight, valued at that sum carried or not carried, Carmick is master, at and from the 10th day of November 1837, at noon, for the term of twelve calendar months: with liberty of the globe; and if at sea at the expiration of that time, the risk is to continue until her arrival in the United States, at the same rate of premium.

Premium, 5 per cent.

To return *pro rata* for time not used.

EYRE & MASSEY.

ORDER FOR INSURANCE.

Insurance, $8500 on the brig Delight, Carmick, master, valued at that sum, for and during the term of twelve calendar months, commencing this day at noon, with liberty of the globe; and if at sea at the expiration of said twelve months, the risk is to continue at the same rate of premium until her arrival at her port of destination in the United States; to return a proportional rate of premium for time not used, and no loss. Average loss to be adjusted each passage.

Premium, 5 per cent. for twelve months.

[Signed]                    EYRE & MASSEY.

Philada., Nov. 10th 1837.

*To the Marine Insurance Company.*

N. B. If the vessel is sold previous to the expiration of said twelve months, a proportionate rate of premium to be returned.

The plaintiffs also proved that the brig Delight, owned by the

[Eyre v. The Marine Insurance Co.]

plaintiffs, sailed from Philadelphia in November, 1837, for South America, for the purpose of freighting, and took a cargo on board entirely on freight, at Rio Janeiro, in South America, and sailed thence on the 9th of October 1838, for the island of Jersey, in the British Channel, for orders. That on the 10th of November 1838 she was at sea on the voyage to Jersey, and while still at sea on her said voyage, in December 1838, encountered heavy gales and seas which did great damage to the brig, and compelled her to put into Falmouth, England, for repairs. That she was there repaired, and sailed thence with her cargo for Altona, where she arrived in April 1839, and, after discharging her cargo from Rio Janeiro, took on board another cargo entirely upon freight, and, on the 28th of June 1839, sailed from Altona for New Orleans, where she arrived. Plaintiffs also proved an adjustment made by a ship-broker of the partial loss on said brig in December 1838, and ascertained it to be $5829.91.

1. And the plaintiffs further offered to prove that the voyage described in the said policy is known among merchants and underwriters as a trading voyage, and that, on such a voyage and under such a policy, it is the usage of trade that the vessel insured should sail for any part of the globe to which she can get a freight, at any time during the continuance of the twelve months mentioned in the policy, and that, by the usage of trade, she continues to be covered by such policy during such voyage, after the expiration of the said twelve months; and that such usage is well known to, and acted on by, the underwriters of this port. To which the defendants objected and the learned judge sustained the objection, and refused to admit the said evidence, or any part thereof; to which refusal the plaintiffs excepted.

2. And the plaintiffs further offered to prove that on the voyage next preceding the one for which the said policy was effected, the defendants insured the said brig Delight for plaintiffs, for twelve months, with liberty of the globe except the north of Europe, for a premium of $3\frac{1}{2}$ per cent. per annum, and that, at the time of effecting said policy on which this action is brought, the premium was increased to $1\frac{1}{2}$ per cent. per annum in consideration of the vessel's having the liberty of the globe, including the north of Europe; that, in the ordinary course of such a voyage, the vessel would not arrive in the north of Europe until after the expiration of the twelve months mentioned in the policy. To which the defendants objected, and the learned Judge sustained the objection, and refused to admit the said evidence, or any part thereof; to which refusal the plaintiffs excepted.

3. And the plaintiffs further offered to prove that, at the time the policy on which this action is brought was effected, the plaintiffs delivered to the secretary of the defendants a copy of an order for insurance on the freight of said brig, (given by plaintiffs to the Insurance Company of North America, and on which that company

[Eyre v. The Marine Insurance Co.]

had executed a policy on said freight), and then and there request- ed the secretary of defendants to execute a policy on said brig in the terms of said copy of said order; and the secretary of defend- ants then and there took the said copy of order for insurance, and with his own hand wrote the order for insurance on which this policy was effected. That plaintiffs, before signing said order, stated to said secretary that they wished the order in the same terms as that to the Insurance Company of North America, and that he had altered the same by inserting the words " at her port of destination," after the word " arrival," to which the said secre- tary replied " that it was an immaterial alteration, that it made no difference, and that the meaning was the same as if the words thus inserted had been omitted;" upon which assurance, and on the faith thereof, the plaintiffs then and there signed the order so written by the said secretary, and the policy was thereupon then and there executed and delivered to the plaintiffs. To which the defendants objected, and the learned Judge sustained the objection, and refused to admit the said evidence, or any part thereof; to which the plaintiffs excepted.

The learned Judge charged the jury, that the defendants were entitled to a verdict; to which charge the plaintiffs excepted.

The case was argued at this term by *Meredith* for the plaintiffs, and *W. B. Reed* and *J. M. Scott* for the defendants; and was now re-argued as to the question of usage by *Meredith* for the plaintiffs, and *W. B. Reed* for the defendants.

For the plaintiffs.

Evidence of usage has been received on liberal principles, for the purpose of giving a fair construction to policies according to the intention of the parties. It has from time to time been resorted to in a great variety of cases, to ascertain their meaning:

1. As to the subject-matter of the policy itself, to show the meaning of the word " roots," and that sarsaparilla was not included in it, *Coit* v. *Commercial Ins. Co.* (7 *Johns.* 385); to show that rice was included within the word " corn," *Scott* v. *Bourdil- lion*, (5 *B. & P.* 213); that the word " furs" included certain skins, *Astor* v. *Union Ins. Co.* (7 *Cow.* 202); and that where there was insurance on goods out, and the proceeds thereof home, and the same goods were brought back, they were within the policy. *Dow* v. *Whetten*, (8 *Wend.* 160). This was in direct opposition to the clear meaning of the word " proceeds."

2. It is received to show whether a particular expression amounted to a warranty; as that a description of a British brig was a warranty, though from its position in the policy it was decided otherwise. *Mackie* v. *Pleasants*, (2 *Binn.* 373).

3. On the subject of place. In *Robertson* v. *Clarke*, (1 *Bing.* 445), the insurance was to port or ports of landing in India, or the Indian islands. Evidence was admitted to show a mercantile

[Eyre v. The Marine Insurance Co.]

usage that Mauritius was an Indian island, though it was geographically an African island; and in *Uhde* v. *Walters*, (3 *Camp.* 16), where the question was what was meant by a port in the Baltic, and a vessel sailed for Revel, in the Gulf of Finland, the court construed it to be within the policy by mercantile usage.

4. Mode of proof. In *Allegre* v. *Maryland Ins. Co.* (6 *Har. & John.* 408), evidence of usage was allowed to show what was meant by the clause allowing time for payment ninety days after proof.

5. As to the meaning of the word "port." In *Moxon* v. *Atkins,* (3 *Camp.* 200), the insurance was at and from Amelia Island, and the vessel loaded at another island; but it was proved to be usual for vessels to load there, and the plaintiff recovered. In *Constable* v. *Noble,* (2 *Taunt.* 403), the insurance was at and from Lyme, and the same kind of proof was allowed. So in 3 *B. & P.* 460, the insurance was to a particular port, and then to all ports, and the vessel went where there was no port, but only an open roadstead, and was lost on the voyage. It was there contended she could not go where she could not have the protection of a port, and that this was obvious on the face of the policy.

6. As to time. In 3 *Esp. N. P.* 121, fourteen days' demurrage was stipulated; and to show what days it embraced, Lord Kenyon admitted evidence of the usage and understanding that Sundays were excluded, thus making sixteen days instead of fourteen.

7. The words " in case the vessel should be turned away," have been explained by evidence of mercantile usage that they meant " turned away by a blockading force."

8. The evidence of usages of navigation is always received. In *Lawrence* v. *Aberdeen,* (5 *B. & Ald.* 107), the insurance was on living animals free from jettison and mortality, and it was held that the animals that died on the voyage were not covered by the policy. In *Gabay* v. *Lloyd,* (3 *B. & C.* 793, 10 *E. C. L.* 229), the jury found the custom of insurers in London and at the Coffee House, and under this proof of the usage the insurers were held not liable, only because it was found they did not know of the usage.

9. In *Palmer* v. *Blackburne,* (1 *Bing.* 61), usage was admitted as to the amount of freight.

10. As to deviation. *Salvador* v. *Hopkins,* (3 *Burr.* 1707).

11. Insurance was on goods till they were safely landed at Leghorn; and it was held that landing at the Lazaretto was, under the usage, landing at Leghorn.

12. Usage is received as to the course of a voyage. 3 *Doug.* 419; *Parke's Ins.* 83, 84; *Grant* v. *Paxton,* (1 *Taunt.* 463); *Vallance* v. *Dewar,* (1 *Camp.* 503); *Ougiere* v. *Jennings,* (1 *Camp.* 505, *note*); *Noble* v. *Kennowa,* (1 *Doug.* 510). So in *Winthrop* v. *Union Ins. Co.* (2 *Wash. C. C. R.* 7), evidence was received of usage not to sell any part of the cargo on board at an intermediate port, the insurance being on goods with liberty to trade at the Isle of France, and any other port in the Indian seas; with liberty also to touch and trade

[Eyre v. The Marine Insurance Co.]

for refreshments. In *Gordon* v. *Little*, (8 *S. & R.* 533), evidence was admitted to show the meaning of the phrase "unavoidable dangers of the seas," and to limit the responsibility of the carrier; and in *Snowden* v. *Warder*, (3 *Raw.* 101), to make a vendor liable without express warranty. In *Shewell* v. *Gibbs*, (1 *Hall* 602), it was agreed on a purchase of indigo, tare should be allowed at 10 per cent. It was found that the indigo had been fraudulently packed where it was raised, and evidence was received of the usage to allow the actual tare. In *De Forest* v. *Fulton Ins. Co.* (1 *Hall* 84), evidence was received of the usage of commission merchants to charge insurance without orders. He also cited *Moliere* v. *The Penn. Ins. Co.* (5 *Rawle* 342); *Schuylkill Navigation Co.* v. *Moore*, (2 *Whar.* 477); *Stacey* v. *The Franklin Fire Ins. Co.* (2 *Watts & Serg.* 506).

For the defendants.

The usage or custom of a particular port or trade does not bind, unless it is known to the parties. In this case, (6 *Whart.* 247), this court decided upon the present policy that if, at the end of the year, the vessel was coming home, she was covered; but if elsewhere, she was not. There the words have received a judicial construction, and no case cited shows that usage has been admitted to controvert that. In *The Schuylkill Navigation Co.* v. *Moore*, the question was on the scientific meaning of terms; and in *Moliere* v. *The Penn. Ins. Co.*, what was the meaning of a brick ice-house. In these cases there was ambiguity.

Had the Delight any port of destination in the United States when she was going to the Isle of Jersey for orders? No usage can make it out that she had. Could she ramble throughout the earth? Are the defendants to be liable to continued and partial losses between Jersey and Altona, if such have taken place? All the cases cited refer to terms and words of a particular trade, the meaning of which was doubtful. The correct rule is laid down in *Robertson* v. *French*, (4 *East* 135), that usage can be admitted only where words have acquired a peculiar meaning, different from ordinary acceptation. In other cases the courts are to construe the policy. Philips, in his first volume on Insurance, chap. i., § 10, gives all the cases cited on the other side, and then all cases where the courts are obliged to go out of the instrument to find the meaning, but not where it speaks for itself and can be judged of, and has been, by its own face. The only case that seems to go beyond this, or rather goes the furthest of any case, is in 8 *Wend.* 160, where the Court of Errors reversed the Supreme Court on this very question, arising out of the use of the word "proceeds," an obscure word. In *Parke's Ins.* 470, goods were insured to their landing. Evidence was refused to show it was understood to be till landed twenty-four hours in safety. In *Mackie* v. *Pleasants*, the question of usage was not inquired into by the court.

v. — 16    L

[Eyre v. The Marine Insurance Co.]

The case had been submitted to referees, and the court would not go behind the award. In *Doug.* 12, it was proposed to introduce the slip or order, but it was refused. In *Winthrop* v. *The Union Ins. Co.*, Judge Washington says, "If the language of the policy is plain, usage cannot be resorted to." In *Rankin* v. *The American Ins. Co.* (1 *Hall* 632), it is held usage cannot vary or affect a written agreement: it is confined to the interpretation of peculiar words; and there is no case where commercial usage is admitted, unless to explain peculiar words of a particular trade, that is to say, where a trade is described by a term, as the Guinea trade, the Newfoundland trade, to Indian islands, &c. But there is no such thing here. The words are susceptible of being decided, and have been, without extrinsic aid. This court will not allow parties to go out of the policy to change the character of the case.

*Reply.*—No case is shown where such evidence has been rejected. There was no ambiguity in the words, "proceeds," "port," "demurrage," "turning away," or in any of the cases cited. The evidence of usage is admitted to change expressly what would otherwise be the legal construction. This usage is to be proved by evidence, and not by the opinions of witnesses. The evidence of usage was withheld at the first trial of this case, because deemed unnecessary; but having now become necessary, it was offered on the ground on which it has always been admitted. The usage offered was to cover the voyage which the vessel undertook, not for ever; and she was on her way to Jersey for orders in the prosecution of that voyage. We undertook to prove the ordinary course of such a trading or freighting voyage by the evidence of mercantile usage, and not of opinion.

The opinion of the Court was delivered by

Sergeant J.—The plaintiff offers to prove that the voyage insured is known by the name of a trading voyage, and that, by the usage of trade, the vessel may sail for any part of the globe to which she can get a freight, at any time during the twelve months, and continues covered by the policy during such voyage; and that such usage is well known to, and acted upon by the underwriters of this port. We are not able to distinguish this case from the numerous cases decided, in which proof of such a usage has been admitted to vary and control the language used in the policy, and to give a construction different from that which it otherwise would have received, or did receive. All the cases that have arisen seem to have been pretty much decided one way, and to have adopted and enforced the principles laid down by Lord Mansfield in *Pelly* v. *The Royal Exchange Assurance Company*, (1 *Burr.* 341), that the assurer, in estimating the price at which he is willing to indemnify the trader against all risks, must have under his consideration the nature of the voyage to be performed, and the usual course

[Eyre v. The Marine Insurance Co.]

and manner of doing it. Everything done in the usual course of the voyage must have been foreseen and in contemplation at the time the insurer engaged. He took the risk on the supposition that what was usual and necessary should be done. In general, what is usually done by a ship with such a cargo in such a voyage, is understood to be referred to by every policy, and to make a part of it, as much as if it were expressed." "No rule," says Parke in his treatise on insurance, page 30, " has been more frequently followed than the usage of trade with respect to particular voyages or risks, to which the policy relates; and the learned Judges have always called in the usage of trade, as the ground on which the construction turns." In the case before us, there is a voyage of a peculiar kind, not from one port to another, but with liberty of the globe, anywhere and everywhere. And as, in a voyage to a place or a port, usage has been called on to show what was meant by the description of such voyage, so may it explain what was meant by a voyage of the description in this policy, and to bring within the voyage described in the policy what, on the face of it, would not be within it. Usage may add a new construction, variant from the face of the instrument, as much as if it had been contained in a new clause, or by a reference to it. We think, therefore, the evidence of usage ought to have been received.

2. The evidence going merely to show a different contract on a former occasion, and stating reasons for the present one, but not offering to prove anything which occurred at the making of the policy, or was alleged by the parties, we think was properly rejected.

3. The third item of evidence offered would not, if admitted, make any difference in the construction of the policy, and therefore, we think, was irrelevant and inadmissible.

New trial awarded.